NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**IN RE JAMES E. STOLLER**

---

2014-1271

---

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in Application No. 11/217,904.

---

Decided: January 15, 2015

---

MATHEW R.P. PERRONE, JR. Law Office of Mathew R.P. Perrone, Jr., of Algonquin, Illinois, argued for appellant.

BRIAN T. RACILLA, Associate Solicitor, Office of the Solicitor, United States Patent and Trademark Office, of Alexandria, Virginia, argued for appellee. With him on the brief were NATHAN K. KELLEY, Solicitor, and JAMIE L. SIMPSON, Associate Solicitor.

---

Before PROST, *Chief Judge,* MOORE, and CHEN, *Circuit Judges.*

MOORE, *Circuit Judge*.

James Stoller appeals from the decision of the Patent Trial and Appeal Board affirming the examiner's rejections of all pending claims in Mr. Stoller's patent application. For the reasons discussed below, we *affirm-in-part*, *reverse-in-part*, and *remand*.

## BACKGROUND

Mr. Stoller's U.S. Patent Application No. 11/217,904 is directed to a multilayered winter turf cover for a golf green. The cover, as shown in Figure 2 below, has a "laminated" structure including a bottom polyethylene layer 112 and a top polyethylene layer 114 with a scrim (i.e., fabric) layer 116 secured between the top and bottom layers. In a preferred embodiment, the scrim layer is "laminated" between the top and bottom layers "using a molten polymer." The '904 application touts the advantages of the laminated structure, including increased moisture protection, easier removal, and increased durability.



Fig. 2.

Claims 21-37 of the '904 application are pending on appeal. Claim 35 is the broadest claim and recites a two-layer cover, with a scrim layer "laminated" to one polyethylene layer, i.e., it requires only two of the three layers described in the preferred embodiment shown in Figure 2. All other claims, however, recite the three-layer laminat-

ed structure of Figure 2. Based on this differing claim scope, the examiner rejected the claims under different combinations of references, rejecting claim 35 as anticipated by U.S. Patent Publication No. 2004/0013824 (Sibbet), and rejecting all other claims as obvious over Sibbet in view of one or more secondary references. The Board affirmed all rejections. Mr. Stoller appeals. We have jurisdiction under 28 U.S.C. § 1295(a)(4).

ANALYSIS

I. Anticipation Rejection of Claim 35

The Board affirmed the examiner's rejection of claim 35's two-layer laminated structure as anticipated by Sibbet. Sibbet discloses a turf cover constructed from two separate covers that are fastened together by stringing nylon loops through a series of grommets around the cover's perimeter. Sibbet Fig. 2 (below), ¶¶ 27-30. The bottom cover 20 is made of polyester mesh, and the top cover 30 is made of polyethylene. *Id.* ¶¶ 14-15. A chopped straw insulating layer 40 is disposed between the bottom and top covers. *Id.* ¶¶ 28, 37.



The examiner found that Sibbet's mesh cover 20 discloses the claimed scrim layer and top cover 30 discloses the claimed polyethylene sheet. The examiner also interpreted "laminated" as "covered or layered" and concluded

that Sibbet's mesh cover 20 was "laminated" under that construction. Prior to this rejection by the examiner, Mr. Stoller had appealed a previous rejection in the prosecution of the same application to the Board. In that appeal, the Board similarly construed laminated as "a structure formed from several layers." During Mr. Stoller's second Board appeal, which led to the present appeal to us, Mr. Stoller argued that the Patent Office's construction was unreasonably broad and that Sibbet's mesh cover was not laminated to the top cover under the broadest reasonable interpretation. The Board affirmed the examiner's finding that Sibbet's two layers were laminated under the broadest reasonable interpretation of that term.

The parties' dispute on appeal centers on the construction of "laminated." Mr. Stoller argues that the broadest reasonable construction of laminated is "fused, bonded, pressed, or adhered together into a unitary structure." The Patent Office argues that the Board correctly construed the term as describing a "structure formed from several layers." We review the Patent Office's construction de novo. *Rambus Inc. v. Rea*, 731 F.3d 1248, 1252 (Fed. Cir. 2013).

We hold that the Patent Office erred in construing "laminated" to require only layering, such that it encompasses Sibbet's perimeter-tied covers. Much like Sibbet's cover, a scarecrow's shirt includes two layers of material sewn together at the perimeter with straw stuffed between them. Under the Patent Office's construction the front and back of the scarecrow's shirt would be laminated. This is not within the ambit of the broadest reasonable construction.

Claim construction begins with the plain language of the claims. The American Heritage Dictionary defines "laminated" as "composed of layers *bonded* together," or "arranged in laminae; laminate." THE AMERICAN

HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE (4th ed. 2006) (emphasis added). To support its construction of "laminated," the Board cited to the definition of "laminate" in an online version of the same dictionary. The definition the Board appears to have relied upon was "to make by *uniting* several layers." *Id.* (emphasis added). Despite the fact that the definitions of both "laminated" and "laminate" include the notion of bonding or uniting the two layers together, this feature is notably missing from the Patent Office's construction.

The '904 application does not define "laminated," but its discussion of laminated structures supports the plain language requirement of bonding or otherwise uniting the two layers together. It describes an exemplary method of laminating two sheets using a molten polymer that solidifies to form a single sheet. '904 application at 6. It also repeatedly explains that laminating the sheets together—both via the preferred molten polymer embodiment and generally—improves tear resistance and durability of the unitary cover. *Id.* at 3-4, 6, 8.

We thus agree with Mr. Stoller that the broadest reasonable interpretation of "laminated" is "fused, bonded, pressed, or adhered together into a unitary structure." This construction is consistent with the plain meaning of "laminated" and "laminate," requiring layers that are bonded together or otherwise form a unitary structure. It is also consistent with the specification's discussion of "laminated" as exemplified by a polymer bond and used to improve the tear resistance of a resulting unitary cover.

Sibbet does not disclose that mesh cover 20 is "laminated" to top cover 30 under this construction. Sibbet's only disclosed means for connecting the two covers is the loop and grommet system disclosed above, which is akin to sewing the edges of the covers together. If this embodiment fell within the definition of laminated, so too would

the scarecrow's shirt or opposing sides of a bean bag or teddy bear. In fact, Sibbet itself distinguishes the loop and grommet system from prior art laminated covers, providing further support that one of skill would not conclude that Sibbet's layers are laminated. Sibbet ¶ 6.

We do not turn a blind eye to the many references in this record that demonstrate that laminating two (or more) layers together was well-known in the art. The only rejection of claim 35 before us, however, is a § 102 rejection based only on Sibbet. That rejection is not supported in the record. Accordingly, we reverse the rejection of claim 35.

## II. Obviousness Rejections of Remaining Claims

The Board affirmed the rejections of claims 21-34 and 36-37 as obvious over Sibbet in view of U.S. Patent No. 6,739,088 ('088 Stoller), or as obvious over Sibbet in view of '088 Stoller and one or more of U.S. Patent Nos. 3,252,251 (Simmons) and 213,932 (Powell). Each of these claims requires a three-layer laminated structure similar to the '904 application Figure 2 embodiment discussed above. As the examiner recognized, Sibbet only discloses two layers and thus does not disclose a three-layer laminated structure. However, '088 Stoller indisputably discloses lamination, and, more particularly, a three-layer laminated structure with two polyethylene sheets laminated to a central foam layer. Oral Argument at 4:37-4:52, 6:11-6:19, *available at* http://oralarguments.cafc.uscourts.gov/default.aspx?fl=2014-1271.mp3; '088 Stoller Fig. 11. That is, the claimed three-layer laminated structure differs from the '088 Stoller three-layer laminated structure by replacing '088 Stoller's central foam layer with the claimed scrim layer. Oral Argument at 4:37-5:18. *Compare* '088 Stoller Fig. 11 *with* '904 application Fig. 2. To reject each of the remaining claims, the examiner thus combined Sibbet's scrim and polyethylene layers

with '088 Stoller's three-layer laminated structure, rendering obvious the claimed three-layer laminated structure with a central scrim layer. The Board's erroneous construction of "laminated" does not affect the obviousness rejections of the remaining claims because '088 Stoller indisputably discloses a laminated structure under the proper construction of that term, and the combination of Sibbet and '088 Stoller renders obvious the claimed three-layer laminated structure.

Mr. Stoller additionally argues that the obviousness rejections are improper for various reasons. For example, Mr. Stoller argues that it would not have been obvious to combine certain references, that the references teach away from the claimed subject matter, and that the combination of references does not teach additional features in the claims. We have considered each of Mr. Stoller's additional arguments regarding the obviousness rejections and do not find them to be persuasive. Because the Board's findings underlying its obviousness rejections are supported by substantial evidence, we affirm the rejections of claims 21-34 and 36-37.

CONCLUSION

Because the Board's obviousness rejections are supported by substantial evidence, but the anticipation rejection of claim 35 is not, we *affirm-in-part*, *reverse-in-part*, and *remand*.

**AFFIRMED-IN-PART, REVERSED-IN-PART, AND REMANDED**

COSTS

No costs.